**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION**

**JAMES V. SMITH, JR.,**

**Plaintiff,**

**vs.** **Case No. 4:15cv53-RH/CAS**

**OFFICER ADAM VANN,**
**SGT. JOSEPH BAILEY,**
**SGT. RONALD M. TADLOCK,**
**and OFFICER COLBY MURPHY,**

**Defendants.**

**_______________________________/**

**THIRD REPORT AND RECOMMENDATION**[1]

Two dispositive motions remain pending in this case: a motion for summary judgment filed by Defendants Vann[2] and Bailey, ECF No. 88, and a second motion for summary judgment filed by Defendants Tadlock and

---

[1] The first Report and Recommendation, ECF No. 43, recommending denying the motion to dismiss, ECF No. 31, for failure to exhaust administrative remedies filed by Defendants Bailey, Murphy, and Vann. The Report and Recommendation was adopted without objection. ECF No. 44. The second Report and Recommendation, ECF No. 98, was entered on Defendant Couliette's motion to dismiss, ECF No. 59, and Defendant Philman's motion to dismiss, ECF No. 92. That Report and Recommendation was also adopted without objection, and the claims against Defendants Philman and Couliette were dismissed for failure to state a claim on which relief could be granted. ECF No. 107.

[2] The motion for summary judgment clarifies that this Defendant's surname is spelled Vann. ECF No. 88 at 1. That spelling is now used instead of Van.

Murphy, ECF No. 89. Plaintiff was advised of his obligation to respond to those motions pursuant to Local Rule 56.1 and Federal Rule of Civil Procedure 56. ECF No. 90. Plaintiff filed his response, ECF No. 99, along with numerous exhibits on May 4, 2017. However, Plaintiff did not comply with Local Rule 56.1 and he was required to file an amended response. ECF No. 102. After filing two motions for clarification, ECF Nos. 103 and 105, Plaintiff filed his amended response to both summary judgment motions. ECF No. 108. Defendants were given leave to file a reply, *see* ECF No. 109, and they did so on July 11, 2017. ECF No. 110.

**Plaintiff's Allegations**[3]

Plaintiff's amended complaint, ECF No. 8, alleged that on November 1, 2012, he was assaulted by Defendant Vann at Taylor Correctional Institution's Work Camp. *Id.* at 8. Defendant Bailey observed the assault, and told Plaintiff numerous times to keep his "mouth shut and everything would be ok." *Id.* at 8-9. Plaintiff contacted his sister about the incident who contacted the Inspector General's office. *Id.* at 9-10. On November 2, 2012, he was moved to the Annex and placed in confinement. *Id.* at 10. Plaintiff told his story to Inspector McCray on November 5, 2012, who then

[3] Only the relevant claims against the remaining Defendants are included.

informed Plaintiff that he "could expect to be moved to a new institution within 2 weeks." *Id.*

On November 8, 2012, Defendant Murphy was escorting Plaintiff and also told Plaintiff to keep his mouth shut about Defendant Vann. ECF No. 8 at 10. On November 27, 2012, Defendant Murphy advised Plaintiff that if he was "smart," he would drop his complaint against Defendant Vann. *Id.*

Plaintiff was moved from confinement to the M-1 dormitory on December 28, 2012. ECF No. 8 at 10. There, he obtained a grievance form, completed it, and placed it in the "secure lock box." *Id.* On January 10, 2013, Plaintiff was being escorted to the shower when Defendant Murphy told him that he had seen the grievance Plaintiff wrote against him. *Id.* at 11. Defendant Tadlock told Plaintiff that he "now" had reason to be "in fear" for his life. *Id.* Later that evening, Defendant Tadlock read Plaintiff's journal aloud and made remarks to instigate other prisoners to attack Plaintiff. *Id.* Defendant Tadlock made numerous other comments to Plaintiff which could reasonably be taken as threats of violence. *Id.* Plaintiff and his cellmate, Mr. Beaton, orchestrated a physical altercation to appease Defendant Murphy. *Id.* at 12. However, Defendant Tadlock directed Mr. Beaton to continue assaulting Plaintiff before finally using

"pepper spray" to stop the "fight." *Id.* Plaintiff alleged that he continued to be intimidated until transferred. *Id.* His amended complaint was sworn under penalty of perjury. *Id.* at 14.

**Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Thus, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323, 106 S. Ct. at 2553. The non-moving party must

then show[4] though affidavits or other Rule 56 evidence "that there is a genuine issue for trial" or "an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S. Ct. at 2554; Beard v. Banks, 548 U.S. 521, 529, 126 S. Ct. 2572, 2578, 165 L. Ed. 2d 697 (2006).

An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted). Additionally, "the issue of fact must be 'genuine'" and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (other citations omitted). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1243 (11th

[4] "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998) (quoting Celotex, 477 U.S. at 324, 106 S. Ct. at 2553) (quoting Fed. R. Civ. P. 56(c), (e))). The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c). Owen, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

Cir. 2003) (quoting Chapman v. Al Transp., 229 F.3d 1012, 1023 (11th Cir. 2000)).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249, 106 S. Ct. at 2511 (noting that a "scintilla of evidence" is not enough to refer the matter to a jury). The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Hickson Corp., 357 F.3d at 1260 (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986)). All "justifiable inferences" must be resolved in the light most favorable to the nonmoving party, Beard, 548 U.S. at 529, 126 S. Ct. at 2578 (noting the distinction "between evidence of disputed facts and

disputed matters of professional judgment."),[5] but "only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (quoted in Ricci v. DeStefano, 557 U.S. 557, 586, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356 (other citation omitted).

**Exhaustion**

The prior motion to dismiss, ECF No. 31, argued that the complaint should be dismissed because Plaintiff failed to exhaust administrative remedies. As noted earlier, that argument was rejected. ECF Nos. 43, 44. It was accepted that Plaintiff's efforts to access the grievance process were thwarted and, thus, the grievance process was "unavailable" to Plaintiff. ECF No. 43. The Order adopting the Report and Recommendation noted that Defendants had not carried their burden to show Plaintiff failed to exhaust administrative remedies. ECF No. 44.

---

[5] Because deference must be given "to the professional judgment of prison administrators, . . . "[u]nless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." Beard, 548 U.S. at 530, 126 S. Ct. at 2578 (citing Overton v. Bazzetta, 539 U.S. 126, 132, 123 S. Ct. 2162, 2167, 156 L. Ed. 2d 162 (2003)).

Having proceeded through discovery, Defendants now seek to more fully support their affirmative defense and show that Plaintiff failed to exhaust administrative remedies. ECF Nos. 88, 89. Defendants Vann and Bailey argue that Plaintiff could, and should, have exhausted administrative remedies by January 20, 2013. ECF No. 88 at 13.[6] Those Defendants assert, again, that there is no record of Plaintiff having filed grievances while at Taylor Correctional Institution during that period of time. *Id.* (citing ECF No. 31-2 at ¶6, the affidavit of Elaine Hines).

Defendants Tadlock and Murphy also argue that it was "temporally impossible for Plaintiff to have properly exhausted his administrative remedies regarding his" claims against them. ECF No. 89 at 8. Defendants point to Plaintiff's deposition testimony in which he said that his grievances were "filed within the time frame between December 28th an January 10th." ECF No. 89 at 8 (citing ECF No. 88-10 at 4-5 (Ex. I). They argue that Plaintiff's own statements demonstrate "he did not properly exhaust his administrative remedies because his formal grievance would have been premature and in non-compliance with the Florida

[6] Plaintiff's complaint against these Defendants began with an incident on November 1, 2012, ECF No. 88 at 13, and continued through January 10, 2013, with threats and harassment.

Administrative Code." ECF No. 88 at 14-15; *see also* ECF No. 89 at 8-9. Defendants contend, first, that there "is no record of such filings," and "even if Plaintiff did file the grievances he claims he filed, it is still temporally impossible for Plaintiff to have exhausted his administrative remedies regarding the alleged" incidents with Defendants Tadlock and Murphy as they "occurred **after** the time period that Plaintiff explicitly describes as being when he filed the grievances." ECF No. 89 at 8-9.

Defendants also contend that Plaintiff's assertion in his appeal to the Secretary that he was prevented from participating in the grievance process is untrue and untimely. ECF No. 88 at 15. Defendants point out that even if Plaintiff's statements are correct and the grievance process was unavailable to him as he has maintained, Plaintiff was transferred away from Taylor Correctional Institution much sooner and could have presented his claims. *Id.* at 15-16.

In response to those arguments, Plaintiff asserts that this issue has already been addressed and he contends he followed "proper procedure." ECF No. 108 at 1. Plaintiff said that prison officials are to blame if grievances were not "forwarded to the correct location." *Id.* He asserts that the grievance process was unavailable to him to grieve about

Defendants Tadlock and Murphy because he was in confinement under their control. *Id.* at 2. He says that his prior requests for grievance forms were ignored. *Id.* He also suggests that "had the requested forms been provided, the likelihood of completed grievances forms making it to the required destination was remote at best." *Id.* He asserts "that as soon as he was able he filed an appeal of the previous grievances including additional details concerning Defendants Tadlock and Murphy." *Id.* (citing to Ex. A [ECF No. 108 at 14-17]). Attached to his response is a copy of the appeal he filed with the Secretary's Office on May 3, 2013. ECF No. 108 at 14. That appeal was "returned without action" because the grievance log revealed he "never filed a formal grievance on" the issues raised while at Taylor Correctional Institution and he was "well beyond the time frame to file a grievance." *Id.* at 15.

Plaintiff contends that he attempted "in every way that was available to him," to advise prison officials of his problems. ECF No. 108 at 2. He points out that he contacted his sister and requested that she speak with "officials concerning his treatment." *Id.* Plaintiff says that she did so, and spoke with officials at the institution as well as the Inspector General's office and the Regional Director. *Id.* He questions "[w]hat more could have

been done to comply" and contends that he met the exhaustion requirement. *Id.* He contends that his May 8, 2013, grievance gave Defendants the opportunity to resolve this controversy two years before this litigation was initiated. *Id.* at 3.

The Prison Litigation Reform Act precludes a prisoner from initiating a § 1983 action concerning his prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement of § 1997e(a) is a mandatory, pre-condition to suit. Booth v. Churner, 532 U.S. 731, 739, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001); see also Porter v. Nussle, 534 U.S. 516, 524–25, 122 S.Ct. 983, 988, 152 L.Ed.2d 12 (2002). Furthermore, the Supreme Court has clarified that exhaustion means "proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 95, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006) (cited in Dimanche v. Brown, 783 F.3d 1204, 1210 (11th Cir. 2015)). "The doctrine of exhaustion of administrative remedies is well established in the jurisprudence of administrative law." McKart v. United States, 395 U.S. 185, 193, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969) (quoted in Woodford, 548 U.S. at 88, 126 S. Ct. at 2384-85).

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."

Woodford, 548 U.S. at 90, 126 S. Ct. at 2385 (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)).

To determine "proper exhaustion" in prisoner civil rights actions, courts must look to the requirements of the "prison grievance system." Woodford, 548 U.S. at 95, 126 S. Ct. at 2388 (stating "[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance."). A prisoner must comply with rules "defined not by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218, 127 S. Ct. 910, 922, 166 L. Ed. 2d 798 (2007). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" Jones, 549 U.S. at 218, 127 S. Ct. at 922-23.

Failure to exhaust is an affirmative defense. Jones, 549 U.S. at 216, 127 S. Ct. at 921. The burden of proof for evaluating an exhaustion

defense rests with the Defendants. 549 U.S. at 216, 127 S.Ct. at 921, 166 L.Ed.2d 798 (2007) (concluding "that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); Turner v. Burnside, 541 F.3d 1077 (11th Cir. 2008). A court may resolve disputed factual issues concerning exhaustion. Turner, 541 F.3d at 1082 (citing Bryant v. Rich, 530 F.3d 1368, 1373-74, 1376 (11th Cir. 2008)); *see also* Dimanche v. Brown, 783 F.3d 1204, 1210 (11th Cir. 2015) (stating that a district court must "make specific findings in order to resolve the disputed factual issues related to exhaustion.").[7] Resolving such issues includes determining whether administrative remedies were available. For example, administrative remedies are not "available" to a prisoner if "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Pearson v. Taylor, 665 F. App'x 858, 868 (11th Cir. 2016) (quoting Ross v. Blake, --- U.S. ----, 136 S.Ct. 1850, 1860 195 L.Ed.2d 117 (2016)).

[7] "Where exhaustion . . . is treated as a matter in abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376. In this case, the parties had the benefit of discovery to develop a record.

**Evidence**

Plaintiff's amended complaint, ECF No. 8, is sworn under penalty of perjury and presents testimony which shows that the assault took place on November 1, 2012, at Taylor C.I.'s Work Camp. Defendant Bailey warned him to keep quiet, but Plaintiff contacted his sister about the incident who contacted the Inspector General's office. The following day, he was moved to the Annex. Three days later Plaintiff was interviewed by an official with the Inspector General's Office.[8] Plaintiff was moved from confinement to a dormitory on December 28, 2012. ECF No. 8 at 10. After being moved to the dormitory, Plaintiff said he obtained a grievance form, completed it, and placed it in the "secure lock box." *Id.* On January 10, 2013, Defendant Murphy told him that he had seen Plaintiff's grievance and "now" had reason to be "in fear" for his life. *Id.* at 11. That testimony establishes that Plaintiff submitted one grievance.

Plaintiff also filed a copy of a grievance appeal which he submitted on May 3, 2013, while housed at Cross City C.I. ECF No. 108 at 14 (Ex. A). In that document, Plaintiff asserted that he submitted "an informal as well

---

[8] Plaintiff's complaint alleged that he was interviewed on November 5, 2012. ECF No. 8 at 10. Defendants submitted the Inspector General's Investigative Report which states that Plaintiff was interviewed on November 6, 2012. ECF No. 88-3 at 13 (Ex. B).

as a formal grievance" but "received no reply." *Id.* Plaintiff said he put those grievances in the lockbox at Taylor Correctional Institution in early January 2013. *Id.* He said that was his earliest opportunity to file an appeal because he was placed in confinement on November 2, 2012, "held for 57 days, repeated requests for grievance forms were ignored while in confinement." *Id.* He states that he was also held again in "confinement in mid-January 2013 on a false charge until March 2013." *Id.* However, Plaintiff's statements in the grievance appeal and his response to summary judgment are not sworn under penalty of perjury.

Defendants have submitted evidence confirming that Plaintiff was held in administrative confinement at Taylor Annex between November 2, 2012, and December 28, 2012. ECF No. 88-8 at 2 (Ex. G). Plaintiff's "Internal Movements" history form shows he was in open population from December 28, 2012, until January 10, 2013, when he was again placed in administrative confinement. *Id.* On January 15, 2013, he was moved to disciplinary confinement. *Id.*

In addition to those internal movements, Defendants also submitted evidence showing that Plaintiff was transferred from the Taylor Work Camp to the Taylor Annex on November 2, 2012. ECF No. 88-7 at 2 (Ex. F).

Plaintiff was not transferred away from the Taylor Annex to the Regional Medical Center (R.M.C) until March 4, 2013. *Id.* On March 11th, he was located in Hillsborough County and out of the Department's custody for separate court proceedings. *Id.* He was returned to the Department's custody and housed at Cross City C.I. on April 30, 2013. *Id.*

Additionally, in mid-March 2013, Plaintiff was requesting medical care for back pain and said he was injured in an incident with an officer at Taylor C.I. ECF No. 88-6 (Ex. E at 37). Plaintiff specifically alleged staff abuse at that time. *Id.* at 38.

Finally, Defendants provided a portion of Plaintiff's deposition in which Plaintiff testified that he submitted an informal grievance at some point between December 28, 2012, and January 10, 2013. ECF No. 88-10 at 5 (Ex. I). Plaintiff said he put it in the grievance box at the institution. *Id.* He also declared that he submitted a formal grievance, but he could not recall the exact date. *Id.* Plaintiff said he waited a "period of days," and declared that he "was going through the process as the process was outlined." *Id.* He contends that the process was completed between December 28th and January 10th. *Id.* at 4-5.

**Analysis**

The evidence has been reviewed to resolve the parties' disputed facts concerning exhaustion. Dimanche, 783 F.3d at 1210 (citing Turner, 541 F.3d at 1083). The evidence has also been considered in light of Florida's grievance requirements as set forth in § 33-103 of the Florida Administrative Code. Jones, 549 U.S. at 218, 127 S. Ct. at 922-23 (citing Woodford); Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017).

Florida requires completing a three-step sequential grievance procedure: (1) informal grievance; (2) formal grievance; and then (3) an administrative grievance appeal. Dimanche, 783 F.3d at 1211. Each of these grievance steps must be completed in order and within the time limits set forth in § 33-103.011. Pavao, 679 F. App'x at 824. An informal grievance is submitted "by placing the informal grievance in a locked grievance box. Locked boxes shall be available to inmates in open population and special housing units." FLA. ADMIN. CODE R. 33-103.005(1)(a). Access to the boxes is limited, but after collection of grievances by a designated official, the grievances are to be logged and then "distribute[d] to the appropriate department or staff" who are to respond within 10 days of receipt. FLA. ADMIN. CODE R. 33-103.005(1)(a),

(4). Similarly, formal grievances (and appeals) are submitted by placing them "in a locked grievance box. Locked boxes shall be available to inmates in open population and special housing units." FLA. ADMIN. CODE R. 33-103.006(1)(h). A response to a formal grievance is to be provided "within 20 calendar days of receipt." FLA. ADMIN. CODE R. 33-103.006(6). The final step of the grievance process is an appeal to the Secretary's Office. FLA. ADMIN. CODE R. 33-103.007. A response must be provided within 30 calendar days. FLA. ADMIN. CODE R. 33-103.011(3)(c).

The Rules also provide time limits for submitting grievances. FLA. ADMIN. CODE R. 33-103.011. An informal grievance must be "received within 20 days of when the incident or action being grieved occurred . . . ." FLA. ADMIN. CODE R. 33-103.011(1)(a). An inmate has 15 calendar days from the date of a response to the informal grievance to file a formal grievance. FLA. ADMIN. CODE R. 33-103.011(1)(b). Similarly, a grievance appeal must be filed within 15 calendar days of the date of the response to the formal grievance. FLA. ADMIN. CODE R. 33-103.011(1)(c). Extensions of time may be granted if the inmate demonstrates "that it was not feasible to file the grievance within the relevant time periods and that the inmate made a good faith effort to file in a timely manner." FLA. ADMIN. CODE R.

33-103.011(2). Importantly, the Rules provide that "[u]nless the grievant has agreed in writing to an extension, expiration of a time limit at any step in the process shall entitle the complainant to proceed to the next step of the grievance process." FLA. ADMIN. CODE R. 33-103.011(4).

Moreover, grievance forms are "available as a minimum from the institutional library, classification department, classification staff, and the housing officer of any living unit or confinement unit." FLA. ADMIN. CODE R. 33-103.015(2). Finally, the Rules provide:

> All informal and formal grievances, except those administrative appeals filed directly with the Office of the Secretary, must be filed at the institution or facility to which the inmate is presently assigned. "Presently assigned" means the institution or facility in which the inmate is housed at the time he files either the informal or formal grievance. When either the informal or formal grievance complaint concerns an informal or formal grievance that occurred at another location, it shall remain the responsibility of the staff at the inmate's present location to handle the informal or formal grievance.

FLA. ADMIN. CODE R. 33-103.015(4). "At no time will an inmate who is alleging that he was physically abused . . . be directed to submit his or her grievance to the staff person who is the subject of the complaint, nor will the grievance be referred to a staff person who is the subject of the complaint." FLA. ADMIN. CODE R. 33-103.015(6).

Plaintiff's demonstration of exhaustion of the grievance process has several problems. First, the initial assault allegedly took place on November 1, 2012, at Taylor's Work Camp. *Id.* at 7. Plaintiff alleged that he was able to obtain complaint forms concerning the actions of Defendants Vann and Bailey and submitted grievances. Plaintiff specifically said that he filed a grievance on or about December 28, 2012. ECF No. 8 at 10. After doing so, Defendant Murphy threatened him saying he had seen the grievance. Yet his complaint (and, thus, sworn testimony) proves only that he filed that one grievance. Moreover, filing a grievance on December 28, 2012, would not have been timely. He was required to file the informal grievance within 20 days of November 1st. He has not shown that he did so. Thus, all other grievances submitted would be untimely. Because the PLRA is not "a toothless scheme" and compliance with procedural rules, including time limits, is required, Plaintiff has not shown that he exhausted administrative remedies. Woodford, 548 U.S. at 95, 126 S. Ct. at 2388.

Admittedly, Plaintiff's response to Defendants' summary judgment motion indicates that he filed "paperwork" at Taylor Correctional Institution concerning the actions of Defendants Vann and Bailey. That response was

not a sworn statement and is insufficient to demonstrate that he complied with the grievance process. It was a general and conclusory assertion and does not overcome Defendants' challenge.

Furthermore, Plaintiff's response is somewhat contradictory in claiming that his requests for grievance forms to complain about Defendants Tadlock and Murphy were "ignored." However, in his deposition, Plaintiff testified that he was able to submit a formal grievance. Plaintiff was unable to provide an exact date, but he said he completed the grievance process between December 28th and January 10th. It cannot be concluded that Plaintiff exhausted administrative remedies because he was thwarted in his efforts while he simultaneously declares that he submitted grievances. Even so, Plaintiff has not demonstrated that during that period of time he proceeded to the third and final step of the grievance process; there was not sufficient time to do so.

Assuming that Plaintiff submitted an informal grievance on Friday, December 28, 2012, prison officials had 10 calendar days to respond. FLA. ADMIN. CODE R. 33-103.011(3)(a). Thus, Plaintiff could not have proceeded to the next step and file an formal grievance until Tuesday, January 9,

2013.[9] At that point, officials had 20 days to respond and, if they failed to do so, Plaintiff would have been entitled to proceed to the third and final step of the grievance process on Tuesday, January 30, 2013. Plaintiff has not shown that he did so. More importantly, Plaintiff has not shown why he could not have done so.

Plaintiff has shown that he did not submit his appeal until May 3, 2013. ECF No. 108 at 14. Plaintiff made a conclusory statement that May 3rd was the "first available opportunity" to file a grievance, but that assertion is questionable. As shown by Defendants, Plaintiff was transferred from the Annex to the Regional Medical Center (R.M.C) on March 4, 2013. *Id.* He remained there until March 11th, when he was removed out of the Department's custody for separate court proceedings. *Id.* Even assuming that Plaintiff was fearful to complain about the Defendants while located either at Taylor Correctional Institution's Annex or Work Camp, he had the ability to submit grievances in early March 2013 after he was transferred. He did not do so.

---

[9] It is assumed that because the 10th day was Sunday, January 7, 2013, the response would not be due until Monday, January 8th. *See* FLA. ADMIN. CODE R. 33-103.011(5), a similar provision which states that if "the 15th day referenced in paragraphs 33-103.011(1)(b), (c) and (d), F.A.C., falls on a weekend or holiday, the due date shall be the next regular work day."

There is no evidence demonstrating that Plaintiff could not have obtained a grievance form at that point. Plaintiff has not identified an official who refused a request for a grievance form. Plaintiff has not provided any evidence showing that while he was in confinement between mid-January and March 2013, no official would provide him with a grievance form. If events transpired as asserted by Plaintiff, all that remained to be done was to submit an appeal to the Secretary's Office because none of his grievances had received a response. Plaintiff has not shown that he could not have done so and completed the grievance process prior to his submission in May 2013.

Importantly, Plaintiff has not alleged that he was afraid to report the events at Taylor once he was housed at Cross City C.I. The evidence reveals he reported his back pain (and its cause due to officer assault) while at Cross City. He could have filed a grievance there which would have been handled by officials at Cross City. Once Plaintiff was no longer in fear to report the events at Taylor, it was incumbent upon him to do so expeditiously. There is no indication that Plaintiff was not aware of the strict time limits which govern the grievance process. Indeed, when Plaintiff submitted an appeal in May 2013, he demonstrated that he was

aware of the need to report the issues promptly. Yet Plaintiff did not act promptly. Instead, he waited two more months to submit the third and final step of the grievance process.

The PLRA requires "proper" compliance with a prison's grievance procedures, including compliance with time limits. Woodford, 548 U.S. at 102, 126 S. Ct. at 2392. Defendants have demonstrated that Plaintiff had sufficient time and opportunity to exhaust his administrative remedies. Plaintiff has not shown with sufficient evidence that administrative remedies were "not available" pursuant to Ross v. Blake, 136 S. Ct. 1850, 1855, 195 L. Ed. 2d 117 (2016). Defendants' motions for summary judgment should be granted as to the exhaustion defense.

**RECOMMENDATION**

It is respectfully **RECOMMENDED** that the motion for summary judgment filed by Defendants Tadlock and Murphy, ECF No. 89, and the motion for summary judgment filed by Defendants Vann and Bailey, ECF

No. 88, be **GRANTED** because Plaintiff did not exhaust administrative remedies, and this case should be **CLOSED**.

**IN CHAMBERS** at Tallahassee, Florida, on February 21, 2018.

S/ Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**